**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ROXANNE BEST and
DEAN SNAPP, individually and
on behalf of all others similarly situated,

**CLASS ACTION**

    Plaintiffs,

    vs.

BLUEGREEN CORPORATION;
EQUIFAX INFORMATION SERVICES, LLC; and
EXPERIAN INFORMATION SOLUTIONS, INC.

    Defendants.
_____/

**<u>CLASS ACTION COMPLAINT</u>**

    COME NOW, the Plaintiffs, ROXANNE BEST and DEAN SNAPP (hereinafter referred to as "Plaintiffs"), by and through their undersigned attorneys and bring this action individually and on behalf of all others similarly situated, seeking damages and equitable relief from Defendants BLUEGREEN CORPORATION (hereinafter referred to as "BLUEGREEN"), EQUIFAX INFORMATION SERVICES, LLC (hereinafter referred to as "EQUIFAX"), and EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter referred to as "EXPERIAN"), and allege as follows:

**<u>JURISDICTION AND VENUE</u>**

1.    This Court has Subject Matter Jurisdiction over this action pursuant to 28 U.S.C. § § 1331, 1332(d)(2), & 1367.

2.    At all material times to this action, BEST has been a resident of North Carolina.

3.    At all material times to this action, SNAPP has been a resident of Indiana.

1

4.      BLUEGREEN is a corporation incorporated in Florida, with its principal place of business in Florida.

5.      At all material times to this action, EQUIFAX has been a Georgia limited liability company with its principal place of business in Georgia.

6.      At all material times to this action, EXPERIAN has been a corporation incorporated in Ohio with its principal place of business in California.

7.      This Court has personal jurisdiction over BLUEGREEN by virtue of it being a Florida corporation with its principal place of business located in Boca Raton, FL.

8.      This Court has personal jurisdiction over EQUIFAX by virtue of it having sufficient minimum contacts with the State of Florida with respect to the subject matter of this action.  EQUIFAX's minimum contacts include but are not limited to: (1) receiving communication from BLUEGREEN's principal place of business regarding Plaintiffs' accounts; (2) contacting BLUEGREEN at its principal place of business regarding Plaintiffs' accounts; and (3) maintaining a Registered Agent located in Florida for the acceptance of service of process.

9.      This Court has personal jurisdiction over EXPERIAN by virtue of it having sufficient minimum contacts with the State of Florida with respect to the subject matter of this action.  EXPERIAN's minimum contacts include but are not limited to: (1) receiving communication from BLUEGREEN's principal place of business regarding Plaintiffs' accounts; (2) contacting BLUEGREEN at its principal place of business regarding Plaintiffs' accounts; and (3) maintaining a Registered Agent located in Florida for the acceptance of service of process.

10.     All of BLUEGREEN's conduct and omissions material to the allegations set forth herein occurred at its principal place of business.

11.     All correspondence and communications BLUEGREEN sent to Plaintiffs, the proposed class members, EQUIFAX, and/or EXPERIAN were sent from BLUEGREEN's principal place of business.

12.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2) & (3) because BLUEGREEN has its principal place of business within this District where a substantial part of the events giving rise to all claims arose.

13.     In the aggregate, the amount in controversy between Plaintiffs and the proposed class members and Defendants exceeds $5,000,000 in consideration of actual damages, statutory damages, and punitive damages.

## FACTUAL BACKGROUND

14.     At all material times to this action, BLUEGREEN,  its subsidiaries, and affiliates advertised, marketed, financed, sold, managed, and maintained vacation ownership interests to and for consumers at numerous Accommodations[1] and Facilities (referred to collectively as "Properties" or individually as a "Property") for the "Bluegreen Vacation Club."

15.     As of 2012, the Bluegreen Vacation Club contained Properties throughout the United States, Aruba, and the Bahamas.   A true and correct copy of a portion of the Bluegreen Vacation Club's 2012 "Public Offering Statement" is attached hereto as Exhibit "1."

16.     Plaintiffs' relationship with BLUEGREEN and its affiliates arise solely out of their status as former members of the Bluegreen Vacation Club and was governed by the "Bluegreen Vacation Club Amended and Restated Trust Agreement" (hereinafter referred to as the "Trust") and its accompanying documents.  A true and correct copy of the Trust is attached hereto as Exhibit "2."

---

[1] Unless otherwise defined herein, all capitalized words and terms have the same meaning as defined in Exhibit "2" to this Complaint.

17.     Plaintiffs were members of the Bluegreen Vacation Club and subject to the Trust by virtue of purchasing beneficial rights appurtenant to a Resort Interest at one of the Properties; the Trust defines a "Resort Interest" as "a timeshare estate (including a Biennial Interest), or license, undivided interest, freehold estate, estate for years, interest in a condominium unit or other ownership or leasehold interests in real property, as any of the foregoing may be defined under applicable state law."

**The Bluegreen Vacation Club and Termination of Owner Beneficiary Rights Under the Trust**

18.     The Bluegreen Vacation Club is multi-state timeshare plan (also known as a vacation club) governed by Florida Statues, Chapter 721 (Florida's "Timeshare Act").

19.     The Trust provides in pertinent part: "all rights under this Agreement (the Trust) shall be governed by the laws of the State of Florida."

20.     The Trust governs the relationship between certain entities and all consumers whom acquire beneficial rights appurtenant to Resort Interests (hereinafter referred to as "Owners") at Properties subject to the Trust; these entities include but are not limited to BLUEGREEN, various Bluegreen affiliates and subsidiaries, and Vacation Trust, Inc. (hereinafter referred as the "Trustee").

21.     BLUEGREEN (or its affiliates) sells consumers membership into the Bluegreen Vacation Club whereby BLUEGREEN (or its affiliates) conveys legal title to a Resort Interest to the Trustee while simultaneously providing consumers Owner Beneficiary Rights appurtenant to the particular Resort Interest conveyed.  Title to the conveyed Resort Interests, evidenced by a deed recorded in the official public records of the county where the Property containing the Resort Interest is located, is held by the Trustee and consumers become Trust beneficiaries by obtaining Owner Beneficiary Rights.

22.     BLUEGREEN may provide Owners financing to acquire their Owner Beneficiary Rights, which is identified in the Trust as Owner Beneficiary Obligations.

4

23.     Owner Beneficiary Rights entail of all beneficial rights identified in the Trust, particularly Vacation Points used to reserve occupancy at various Properties in the Bluegreen Vacation Club.

24.     Owner Beneficiary Rights do not include ownership of any real or tangible property (particularly Resort Interests): any rights are intangible, particularly Vacation Points.

25.     Approximately 120 days after an Owner defaults on their Owner Beneficiary Obligations, their Term expires and they are "deleted from the Trust Estate" pursuant to paragraph 7.02 of the Trust (hereinafter referred to as being "Deleted," being "Terminated,"  a "Deletion,  or a "Termination").

26.     To effectuate a Deletion, it is the Trustee's duty to convey, transfer, or assign the Resort Interest to a third party, which, upon information and belief, is typically either BLUEGREEN or one of its affiliates.

27.     Once an Owner is Deleted, the Owner is not entitled to visit Properties, loses their Vacation Points, is relieved of all rights and responsibilities identified by the Trust, loses their beneficial interest in the Trust, and no longer has any Owner Beneficiary Rights.

28.     The Trust does not reference a "foreclosure" or give any entity the authority to foreclose on a Resort Interest or Owner Beneficiary Rights if an Owner defaults on the terms of a note, mortgage or other financing obligation.

29.     The only punitive measure identified in the Trust for failure to make note payments is a Deletion; BLUEGREEN had knowledge that it or its agents does not undertake any foreclosure proceeding when Terminating Owners from the Trust.

30.     At all material times to this action, BLUEGREEN was aware of all Trust provisions, including its Deletion procedure, the nature of Owner Beneficiary Rights, and all aspects of the Bluegreen Vacation Club.

**Plaintiffs Purchase Beneficial Rights Appurtenant to a Resort Interest From Bluegreen**

31.     On or about April 15, 2006, BEST acquired Owner Beneficiary Rights appurtenant to a Resort Interest at a Property, subject to the Trust, called "Shenandoah Crossing Farm & Country Club," located in Virginia.[2]

32.     BEST financed the transaction with a Promissory Note (hereinafter referred to as the "BEST Note") with BLUEGREEN designated as the "payee."  A true and correct copy of the BEST Note is attached hereto as Exhibit "3."

33.     On or about October 18, 2008, SNAPP acquired Owner Beneficiary Rights appurtenant to a Resort Interest at a Property, subject to the Trust, called "Grande Villas at World Golf Village" in St. Augustine, FL.[3]

34.     SNAPP financed the transaction with a Promissory Note (hereinafter referred to as the "SNAPP Note") with BLUEGREEN designated as the "payee."  A true and correct copy of the SNAPP Note is attached hereto as Exhibit "4."

35.     All amounts Plaintiffs owed to BLUEGREEN under the terms of the Notes were comprised of Owner Beneficiary Obligations.

**Bluegreen's Debt Collection Efforts**

36.     When Plaintiffs defaulted on their Note payments, BLUEGREEN sent letters, (collectively referred to as the "30 Day Letters") warning them they were thirty (30) days past due on their obligations under their respective Notes.  A true and correct copy of the 30 Day Letter sent to BEST is attached hereto as Exhibit "5."

37.     The 30 Day Letters warn Plaintiffs that "[f]ailure to bring your loan current will result in Bluegreen Corporation reporting this delinquency to the credit bureaus."

---

[2] BEST purchased her beneficial rights along with Jamie Harrington.
[3] SNAPP purchased his beneficial rights along with Sharron Snapp.

38.     After Plaintiffs were sixty (60) days delinquent on their Note payments, BLUEGREEN sent letters (referred to as the "60 Day Letters") warning them they were sixty (60) days past due on their respective payment obligations.  True and correct copies of the 60 Day Letters are attached hereto as Exhibit "6."

39.     After Plaintiffs were ninety (90) days delinquent on their Note payments, BLUEGREEN sent letters (hereinafter referred to as the "90 Day Letters") warning them they were ninety (90) days past due on their respective payment obligations.  True and correct copies of the 90 Day Letters are attached hereto as Exhibit "7."

40.     The 90 Day Letters warn Plaintiffs that if payment is not received, Plaintiffs will lose their Owner Beneficiary Rights and be "terminated" from the Bluegreen Vacation Club pursuant to BLUEGREEN's authority found in certain provisions of the Trust and the Bluegreen Vacation Club's Bylaws.

41.     The 90 Day Letters warn Plaintiffs that their "termination for non-payment may result in a foreclosure being listed on your credit history with the credit bureaus."

42.     The 30 Day Letters, 60 Day Letters, and 90 Day Letters were sent in an attempt to compel Plaintiffs to pay BLUEGREEN amounts and avoid Deletion.

43.     With the exception of the reference to credit reporting contained in the 90 Day Letters, there is no reference or indication that BLUEGREEN will file or cause to be filed a foreclosure; BLUEGREEN only cites the Trust, the Club's Bylaws, and "applicable law" as the basis for Deleting or taking other action against Plaintiffs for failure to pay the amount owed.

**Florida's Consumer Collections Practices Act the (FCCPA)**

44.     Florida Statute § 559.55(1) defines "debt" or "consumer debt" as:

> Any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

45.     Plaintiffs' Owner Beneficiary Rights were purchased solely to acquire Vacation Points to use for personal, family, and household purposes.

46.     Florida Statute § 559.55(1) defines a "debtor" or a "consumer" as "any natural person obligated or allegedly obligated to pay any debt;" Plaintiffs and the proposed class members are "consumers" under the FCCPA.

**Bluegreen Reports Plaintiffs' Accounts as a Foreclosed and/or a Foreclosure**

47.     After Plaintiffs were approximately one-hundred and twenty (120) days delinquent on their respective payment obligations, BLUEGREEN sent letters (hereinafter referred to collectively as the "Termination Letters") advising them they had been Deleted from the Trust.  True and correct copies of the Termination Letters are attached hereto as Exhibit "8."

48.     By virtue of the Deletion process described in the Trust, Plaintiffs were Deleted from the Trust and had their Owner Beneficiary Rights canceled.

49.     The Termination Letters advise Plaintiffs that the "terminated status of your account has been reported to the credit bureaus which may classify this as a foreclosure."

50.     Subsequent to BLUEGREEN sending the Termination Letters, BLUEGREEN reported to EQUIFAX and EXPERIAN (the "credit bureaus" referenced in the Termination Letters) that Plaintiffs' accounts were "foreclosed" and/or a "foreclosure."

51.     Once BLUEGREEN reported to EQUIFAX and EXPERIAN (hereinafter referred to collectively as the "Credit Reporting Agencies") that Plaintiffs' accounts were "foreclosed" and/or a "foreclosure," Plaintiffs' credit reports and credit files showed their accounts as such.   True and correct partial copies[4] of Plaintiffs' credit disclosures are attached hereto as Exhibit "9."

52.     The Credit Reporting Agencies subsequently reported to numerous third parties, including but not limited to potential creditors, that Plaintiffs' BLUEGREEN accounts were "foreclosed" and/or a "foreclosure."

53.     BLUEGREEN did not "foreclose" on Plaintiffs' Notes, Owner Beneficiary Rights, or Resort Interests under any applicable laws.

54.     It is a factual inaccuracy for BLUEGREEN to classify Plaintiffs' accounts as "foreclosed" and/or a "foreclosure" because the only method used to Delete Plaintiffs from the Trust, divest them from their Owner Beneficiary Rights, and/or transfer legal ownership of any Resort Interest are described in the Trust and its accompanying documents; the Deletion process is not a foreclosure proceeding.

55.     Under credit reporting guidelines, a loan to finance the purchase Owner Beneficiary Rights is properly labeled an "installment loan;" Defendants did not follow appropriate credit reporting guidelines and standards in reporting Plaintiffs' accounts.

56.     BLUEGREEN was aware that the only process it undertook to divest Plaintiffs of their Owner Beneficiary Rights was described in the Trust, which it was aware is not a foreclosure proceeding.

57.     Defendants were aware Plaintiffs' accounts are appropriately labeled installment loans under credit reporting guidelines.

---

[4] Certain identifying and financial information has been redacted.

**Credit Reporting and the Fair Credit Reporting Act (FCRA)**

58.     Pursuant to 15 U.S.C. § 1681, the Legislative intent in adopting the FCRA is to ensure the accuracy and fairness in credit reporting, and require reasonable procedures for the reporting of credit that is fair and equitable to consumers with regard to the "confidentiality, accuracy, relevancy, and proper utilization of such information."

59.     At all material times to this action, the proposed class members were "consumers" as defined by 15 U.S.C. § 1681a(c).

60.     At all material times to this action, the Credit Reporting Agencies were "consumer reporting agenc(ies)" (or credit bureaus) as defined by 15 U.S.C. § 1681a(f).

61.     At all material times to this action, BLUEGREEN was a "furnisher" of credit information because it regularly and in the ordinary course of its business provides consumer reporting agencies with information regarding consumers' credit worthiness.

62.     BLUEGREEN cannot legally report information to the Credit Reporting Agencies that it "knows or has reasonable cause to believe … is inaccurate" pursuant to 15 U.S.C. § 1681s-2(1)(A).

63.     The Credit Reporting Agencies do not report information related to a consumer's BLUEGREEN account unless BLUEGREEN provides the specific information directly to the Credit Reporting Agencies; the Credit Reporting Agencies are vehicles through which consumers' account information is disseminated.

64.     At all material times to this action, the Credit Reporting Agencies have provided the proposed class members' "consumer reports" to third parties as defined by 15 U.S.C. § 1681a(d)(1).

65.     The Credit Reporting Agencies are required to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e (b).

10

## CLASS ACTION ALLEGATIONS

66.    This action is brought by Plaintiffs on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23(b)(3).

## Class Definition

67.    The proposed class is defined as all individuals from within four (4) years before the filing of this action up through and including the date of judgment in this case who: (1) were former Owner Beneficiaries of the Trust, (2) were divested of their Owner Beneficiary Rights solely by being Deleted from the Trust, (3) received a 90 Day Letter from BLUEGREEN referencing or mentioning a "foreclosure," (4) had the status of their BLUEGREEN account(s) identified in their credit files, credit histories, and/or credit reports as "foreclosed" and/or a "foreclosure" by EQUIFAX and/or EXPERIAN, and (5) had their credit information with the "foreclosed" and/or "foreclosure" identifier published, displayed, or provided to third parties by EQUIFAX and/or EXPERIAN. Excluded from the Class are: (1) any employee of the Court, (2) Defendants and any of their respective subsidiaries, affiliates, officers, and directors, (3) any entity in which any Defendant has a controlling or ownership interest, and (4) the legal representatives, heirs, successors, family members, and assigns of any such excluded party.

68.    The Defendants, the Trustee, or their agents, have all necessary information to determine the number and identity of all members of the proposed class.

69.    Plaintiffs reserve the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

## The Proposed Class Is So Numerous That Joinder of All Members is Impracticable

70.    The class is so numerous that joinder of all members would be impracticable. Based on the number of properties subject to the Bluegreen Vacation Club identified in Exhibit 1, there are likely hundreds or even thousands of class members.  Class counsel is currently unaware of the exact or approximate number of proposed class members;

however, Class counsel is specifically aware of at least sixty (60) class members, and such class members are dispersed throughout the United States.

**There Are Common Questions of Law and Fact For All Proposed Class Members**

71.     There are questions of law or fact common to the class. These questions include, but are not limited to:

      a.   Whether the Trust's Deletion procedure is a "foreclosure;"

      b.   Whether the 90 Day Letters would harass, abuse, or mislead the least sophisticated consumer;

      c.   Whether BLUEGREEN knew or had reason to know that it could not report a Deletion as a "foreclosure" to the Credit Reporting Agencies;

      d.   Whether BLUEGREEN sent the 90 Day Letters to account holders it deemed in default;

      e.   Whether BLUEGREEN reported the status of consumers' accounts "foreclosed" and/or a "foreclosure" to the Credit Reporting Agencies;

      f.   Whether the Credit Reporting Agencies are subject to 15 U.S.C. § 1681e(b); and

      g.   Whether the Credit Reporting Agencies maintained adequate procedures under the FCRA to prevent inaccurate and misleading information from appearing in consumers' credit files.

**The Class Representatives Have Claims Typical of the Proposed Class Members**

72.     Plaintiffs' claims for relief are based on the same legal principles and theories arising from the same events, practices, and omissions of the several Defendants.

73.     Defendants' common course of conduct with respect to Plaintiffs and the proposed class members renders their claims typical.

74.     All members of the proposed class were harmed in identical ways by identical acts and omissions of the several Defendants.

75.     Plaintiffs and the proposed class members were all subject to the same Trust and accompanying documents.

76.     Plaintiffs and the proposed class members' relationship with BLUEGREEN is governed by the Trust and Florida law.

77.     The nature and status of Plaintiffs and the proposed class members' BLUEGREEN accounts were identical under any applicable credit reporting guidelines.

78.     BLUEGREEN sent standardized debt collection letters to Plaintiffs and members of the proposed class, particularly the 90 Day Letters.

79.     BLUEGREEN and the Credit Reporting Agencies use the same computer systems and universal automatic data forms to report and receive information regarding Plaintiffs and the proposed class members' accounts.

**The Class Representatives Will Fairly and Adequately Represent and Protect the Interests of the Class**

80.     The interests of the proposed class members are not placed in jeopardy by virtue of the Class Representatives' claims for relief because common issues of law and fact govern Plaintiffs and the proposed class members' claims and requests for relief.

81.     The Class Representatives can fairly and adequately represent the proposed class because they all have the same interests and have been harmed by and subjected to the several Defendants' actions and omissions.

82.     Neither Plaintiffs nor the proposed class members have received any benefit, economical or otherwise, from the several Defendants' conduct and omissions relating to the allegations asserted herein; the Class Representatives do not have opposing or conflicting interests with the proposed class members.

**Class Counsel Will Fairly and Adequately Represent the Interests of the Proposed Class**

83.     The Finn Law Group, P.A. (hereinafter referred to as the "Firm") has represented hundreds of timeshare owners with respect to their timeshare interests, including but not limited to dozens of Owner Beneficiaries.

84.     The Firm has represented timeshare owners in numerous lawsuits against various developers, management companies, owners' associations, and exchange companies involving violations of the Timeshare Act and Federal and State consumer protection statutes, including but not limited to the FCCPA and FCRA.

85.     The Firm has represented consumers in prior litigation against BLUEGREEN, EXPERIAN, and EQUIFAX regarding their collective credit reporting practices, primarily reporting BLUEGREEN's Deletion procedure as "foreclosed" and/or a "foreclosure."

86.     The Firm is primary counsel representing a putative class in litigation currently pending in the Middle District of Florida relating to six (6) defendants' various alleged roles in defrauding consumers at a timeshare resort.

**The Questions of Law and Fact Predominate Over Any Potential Individual Issues**

87.     Predominance is established because if any Defendant is found liable to Plaintiffs, they will be liable to members of the proposed class.

88.     All factual and legal issues pertaining to Plaintiffs' claims will predominate over any other issues that may arise during litigation, particularly the status and legal nature of their Owner Beneficiary Rights and the credit reporting implications thereof.

**A Class Action is Superior to Other Available Methods for Fairly and Efficiently Adjudicating the Controversy**

89.     Due to the anticipated number of proposed class members and number of Defendants, joinder of all proposed class members is unreasonable and hundreds or

perhaps thousands of separate lawsuits regarding identical factual circumstances and legal issues would burden the Court and the several Defendants.

90.     Given the nature of the issues involved in this lawsuit and a finding that the other requirements for class certification having been met, a class action lawsuit is the fairest and most efficient manner to adjudicate this controversy.

## COUNT I- VIOLATION OF FLORIDA STATUTE § 559.72(7) AGAINST BLUEGREEN

91.     Plaintiffs hereby re-allege  previous allegations one (1) through forty-six (46) and sixty-six (66) through ninety (90) as though fully set forth herein.

92.     Pursuant to Fla. Stat. § 559.72(7), in collecting consumer debts, no person shall:

> Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or *willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor* or any member of her or his family (emphasis added).

93.     BLUEGREEN's assertion in the 90 Day Letters that "[y]our termination for non-payment may result in a foreclosure being listed on your credit history with the credit bureaus" was made with knowledge that it would not foreclose on Plaintiffs' Owner Beneficiary Rights or the Resort Interest appurtenant thereto; the 90 Day Letters demonstrate an intent to threaten and coerce Plaintiffs into paying the amounts owed.

94.     The 90 Day Letters imply that BLUEGREEN is uncertain whether a "foreclosure" will appear on Plaintiffs' credit history, despite the fact that it has previously advised Plaintiffs in the 30 Day Letters that it would report their delinquent accounts to the credit bureaus.

95.     When sending the 90 Day Letters, BLUEGREEN had knowledge that absent payment of the funds sought, it would report a "foreclosure" to the Credit Reporting Agencies.

15

96.     When sending the 90 Day Letters, BLUEGREEN had knowledge that a "foreclosure" would appear on Plaintiffs' credit histories with the Credit Reporting Agencies.

97.     The 90 Day Letters constitute abuse and harassment because:

  a.  The least sophisticated consumer would believe that their Deletion was a foreclosure;

  b.  The least sophisticated consumer would believe that the Trust and accompanying documents give BLUEGREEN the authority to foreclose on their Owner Beneficiary Rights;

  c.  The least sophisticated consumer would believe BLUEGREEN has the legal authority to report the status of their Deletion as a foreclosure;

  d.  The least sophisticated consumer would believe that the Credit Reporting Agencies could report their account as a foreclosure under credit reporting guidelines and applicable law;

  e.  The least sophisticated consumer would believe that the Credit Reporting Agencies may decide to identify their account(s) as a "foreclosure" (rather than BLUEGREEN);

  f.  The least sophisticated consumer would be deceived or misled regarding BLUEGREEN's role and responsibility for a "foreclosure" appearing in their credit files;

  g.  The least sophisticated consumer would be coerced, intimidated, and/or pressured into paying BLUEGREEN the debt sought to be collected for fear of having a "foreclosure" in their credit file;

h.  The least sophisticated consumer would be unsure whether a "foreclosure" would actually appear in their credit file, when it fact BLUEGREEN fully intended to report a "foreclosure;" and

i.  The least sophisticated consumer would be deceived or misled because the 90 Day Letters conflict with the 30 Day Letters regarding BLUEGREEN's credit reporting practices.

98.  As a direct and proximate result of BLUEGREEN's conduct, Plaintiffs and the proposed class have been harassed and abused as prohibited by Fla. Stat. § 559.72(7).

**WHEREFORE**, Plaintiffs and the proposed class respectfully request this Court:

A.  Find BLUEGREEN violated the FCCPA;

B.  Award Plaintiffs and the proposed class statutory damages pursuant to Fla. Stat. § 559.77;

C.  Award Plaintiffs and the proposed class punitive damages pursuant to Fla. Stat. § 559.77;

D.  Award Plaintiffs and the proposed class reasonable attorneys' fees and costs pursuant to Fla. Stat. § 559.77;

E.  Enjoin BLUEGREEN from referencing a "foreclosure" in future debt collection efforts; and

F.  Any additional relief this Court deems just and proper.

## COUNT II- VIOLATION OF FLORIDA STATUTE § 559.72(9) AGAINST BLUEGREEN

99.  Plaintiffs hereby re-allege previous allegations one (1) through forty-six (46) and sixty-six (66) through ninety (90) as though fully set forth herein.

100.  Pursuant to Fla. Stat. § 559.72(9), in collecting consumer debts, no person shall:

.....

> Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, *or assert the existence of some other legal right when such person knows that the right does not exist*. (emphasis added).

101.    BLUEGREEN sent the 90 Day Letters with the intent to threaten Plaintiffs with a "foreclosure" appearing in their credit files if they did not pay the alleged debts.

102.    When sending the 90 Day Letters, BLUEGREEN had knowledge that a Deletion was the only measure it or the Trustee would take to divest Plaintiffs of their Owner Beneficiary Rights or re-acquire the Resort Interests appurtenant thereto; specifically, BLUEGREEN knew that it would not file any foreclosure proceeding.

103.    When sending the 90 Day Letters, BLUEGREEN had knowledge of its legal obligation to report accurate information to the credit bureaus as mandated by 15 U.S.C. § 1681s-2(1)(A).

104.    When sending the 90 Day Letters, BLUEGREEN had knowledge that it did not have a legal right to report Plaintiffs' Deletion as a "foreclosure."

105.    When sending the 90 Day Letters, BLUEGREEN had knowledge that the Credit Reporting Agencies did not have a legal right to report inaccurate information under the FCRA.

106.    In sending the 90 Day Letters, BLUEGREEN asserted its legal rights to: (1) report Plaintiffs' accounts a "foreclosure" to the Credit Reporting Agencies and (2) enable the Credit Reporting Agencies to report Plaintiffs' Deletion as a "foreclosure;" both of BLUEGREEN's assertions are actions that cannot be taken under the FCRA, and asserting such are *per se* violations of Fla. Stat. § 559.72(9).

**WHEREFORE**, Plaintiffs and the proposed class respectfully request this Court:

A.    Find BLUEGREEN violated the FCCPA;

B.    Award Plaintiffs and the proposed class statutory damages pursuant to Fla. Stat. § 559.77;

18

    C.      Award Plaintiffs and the proposed class punitive damages pursuant to Fla. Stat. § 559.77;

    D      Award Plaintiffs and the proposed class reasonable attorneys' fees and costs pursuant to Fla. Stat. § 559.77;

    E      Enjoin BLUEGREEN from referencing a "foreclosure" in future debt collection efforts; and

    F.      Any additional relief this Court deems just and proper.

## COUNT III- FLORIDA COMMON LAW DEFAMATION AGAINST BLUEGREEN

107.    Plaintiffs hereby re-allege previous allegations one (1) through thirty five (35), forty seven (47) through fifty seven (57), and sixty-six (66) through ninety (90) as though fully set forth herein.

108.    BLUEGREEN reported the status of Plaintiffs' accounts to the Credit Reporting Agencies as "foreclosed" and/or a "foreclosure" despite its knowledge of the characteristics of Plaintiffs' accounts, the Deletion procedure, and Plaintiffs' Owner Beneficiary Rights.

109.    BLUEGREEN communicating the status of Plaintiffs' accounts as "foreclosed" and/or a "foreclosure" to the Credit Reporting Agencies is actionable *per se*.

110.    BLUEGREEN reported Plaintiffs' accounts as "foreclosed" and/or a "foreclosure" for the specific purpose of increasing the harm to Plaintiffs' credit worthiness, credit standing, and credit score compared to the harm that may have been caused if the accounts were reported accurately.

111.    In BLUEGREEN labeling Plaintiffs' accounts as "foreclosed" and/or a "foreclosure," it has acted with malice by: (1) knowing it did not foreclose on anything, particularly Plaintiffs' Owner Beneficiary Rights, and (2) exhibiting a knowing disregard for the truth regarding the factual accuracy of how it divested Plaintiffs of their Owner Beneficiary Rights.

19

112.     BLUEGREEN labeling Plaintiffs' accounts as "foreclosed" and/or a "foreclosure" resulted in special harm due to the negative implications and consequences of having such information in their credit files, particularly decreasing the likelihood of obtaining or refinancing mortgages and real estate loans.

113.     Plaintiffs and the proposed class having a "foreclosure" in their credit files associated with their BLUEGREEN accounts was the direct and proximate cause of damages, including but not limited to reduced credit worthiness, Plaintiffs being denied credit and economic opportunities, Plaintiffs receiving credit on dis-favorable terms compared to those that would have been obtained but for the "foreclosure" appearing in their credit files, and a decreased credit score.

   **WHEREFORE**, Plaintiffs and the proposed class respectfully request this Court:

   A.     Find BLUEGREEN liable for defamation;

   B.     Award Plaintiffs and the proposed class actual damages, or in the alternative general damages;

   C.     Award Plaintiffs and the proposed class punitive damages;

   D.     Award Plaintiffs and the proposed class reasonable attorneys' fees and court costs;

   E.     Enjoin BLUEGREEN from communicating to third parties that the Deletion procedure is a "foreclosure;" and

   F.     Any additional relief this Court deems just and proper.

## COUNT IV- FLORIDA COMMON LAW SLANDER OF CREDIT AGAINST BLUEGREEN

114.     Plaintiffs hereby re-allege previous allegations one (1) through thirty five (35), forty seven (47) through fifty seven (57), and sixty-six (66) through ninety (90) as though fully set forth herein.

115.     BLUEGREEN reported the status of Plaintiffs' accounts to the Credit Reporting Agencies as "foreclosed" and/or a "foreclosure" despite its knowledge of the

characteristics of Plaintiffs' accounts, the Deletion procedure, and Plaintiffs' Owner Beneficiary Rights.

116.     BLUEGREEN communicating the status of Plaintiffs' accounts as "foreclosed" and/or a "foreclosure" to the Credit Reporting Agencies is actionable *per se*.

117.     BLUEGREEN reported Plaintiffs' accounts as "foreclosed" and/or a "foreclosure" for the specific purpose of increasing the harm to Plaintiffs' credit worthiness, credit standing, and credit score compared to the harm that may have been caused if the account were reported accurately.

118.     In BLUEGREEN labeling Plaintiffs' accounts as "foreclosed" and/or a "foreclosure," it has acted with malice by: (1) knowing it did not foreclose on anything, particularly Plaintiffs' Owner Beneficiary Rights, and (2) exhibiting a knowing disregard for the truth regarding the factual accuracy of how it divested Plaintiffs of their Owner Beneficiary Rights.

119.     BLUEGREEN labeling Plaintiffs' accounts as "foreclosed" and/or a "foreclosure" resulted in special harm due to the negative implications and consequences of having such information in their credit files, particularly decreasing the likelihood of obtaining or refinancing mortgage and real estate loans.

120.     Plaintiffs and the proposed class having a "foreclosure" in their credit files associated with their BLUEGREEN accounts was the direct and proximate cause of damages, including but not limited to reduced credit worthiness, Plaintiffs being denied credit and economic opportunities, Plaintiffs receiving credit on unfavorable terms compared to those that would have been obtained but for the "foreclosure" appearing in their credit files, and a decreased credit score.

**WHEREFORE**, Plaintiffs and the proposed class respectfully request this Court:

    A.    Find BLUEGREEN liable for slander of credit;

B.    Award Plaintiffs and the proposed class actual damages, or in the alternative general damages;

C.    Award Plaintiffs and the proposed class punitive damages;

D.    Award Plaintiffs and the proposed class reasonable attorneys' fees and court costs;

E.    Enjoin BLUEGREEN from communicating to third parties that the Deletion procedure is a "foreclosure;" and

F.    Any additional relief this Court deems just and proper.

## COUNT V- FLORIDA COMMON LAW NEGLIGENCE AGAINST BLUEGREEN

121.    Plaintiffs hereby re-allege previous allegations one (1) through thirty five (35), forty seven (47) through fifty seven (57), and sixty-six (66) through ninety (90) as though fully set forth herein.

122.    BLUEGREEN owed Plaintiffs a common law duty to report the nature of their accounts to the Credit Reporting Agencies in a fair and accurate manner.

123.    BLUEGREEN owed Plaintiffs a duty to report accurate information to the Credit Reporting Agencies pursuant to 15 U.S.C. § 1681s-2(1)(A).

124.    BLUEGREEN should have known that it is misleading and inaccurate to label Plaintiffs' Deletion as "foreclosed" and/or a "foreclosure."

125.    At all material times to this action, BLUEGREEN was aware that a timeshare loan is properly labeled an installment loan under credit reporting guidelines.

126.    At all material times to this action, BLUEGREEN was aware that the only process undertaken to divest Plaintiffs of any interest in their Owner Beneficiary Rights and re-acquire title to the Resort Interests appurtenant thereto was identified in the Trust.

127.    Despite BLUEGREEN's knowledge of the Deletion process and that a timeshare loan is an installment loan, it acted maliciously by exhibiting a knowing and/or reckless

22

disregard for the truth by labeling Plaintiffs' accounts as "foreclosed and/or a "foreclosure."

128.   BLUEGREEN breached its duty to Plaintiffs by continually reporting the false and misleading information to the Credit Reporting Agencies that their accounts were "foreclosed" and/or a "foreclosure."

129.   BLUEGREEN reporting to the Credit Reporting Agencies that Plaintiffs' accounts were "foreclosed" and/or a "foreclosure" was the cause of a "foreclosure" appearing on their credit reports.

130.   BLUEGREEN labeling Plaintiffs' accounts as "foreclosed" and/or a "foreclosure" resulted in special harm due to the negative implications and consequences of having such information in their credit files, particularly decreasing the likelihood of obtaining or refinancing mortgage and real estate loans.

131.   Plaintiffs and the proposed class having a "foreclosure" in their credit files associated with their BLUEGREEN accounts was the direct and proximate cause of damages, including but not limited to reduced credit worthiness, Plaintiffs being denied credit and economic opportunities, Plaintiffs receiving credit on dis-favorable terms compared to those that would have been obtained but for the "foreclosure" appearing in their credit files, and a decreased credit score.

**WHEREFORE**, Plaintiffs and the proposed class respectfully request this Court:

     A.     Find BLUEGREEN liable for negligence;

     B.     Award Plaintiffs and the proposed class actual damages;

     C.     Award Plaintiffs and the proposed class punitive damages;

     D.     Award Plaintiffs and the proposed class reasonable attorneys' fees and court costs;

     E.     Enjoin BLUEGREEN from communicating to third parties that the Deletion procedure is a "foreclosure;" and

     F.     Any additional relief this Court deems just and proper.

## COUNT VI- NEGLIGENTLY FAILING TO MAINTAIN PROCEDURES TO ENSURE MAXIMUM POSSIBLE ACCURACY UNDER THE FCRA AGAINST EQUIFAX AND EXPERIAN

132.    Plaintiffs hereby re-allege previous allegations one (1) through thirty five (35) and forty seven (47) through ninety (90) as though fully set forth herein.

133.    The Credit Reporting Agencies negligently failed to maintain maximum reasonable procedures mandated by 15 U.S.C. § 1681e(b) to determine whether the process for divesting Plaintiffs of their Owner Beneficiary Rights was a foreclosure.

134.    The Credit Reporting Agencies should have been aware of the basic nature of Plaintiffs' BLUEGREEN accounts and the underlying factual basis and legal nature of their Owner Beneficiary Rights, including but not limited to the facts that: (1) the Trustee held legal title to the Resort Interests, (2) BLUEGREEN did not file any judicial or administrative action to foreclose on Plaintiffs' Owner Beneficiary Rights, (3) the only benefits Plaintiffs lost were a beneficial membership in the Bluegreen Vacation Club and the use of their Vacation Points, and (4) the Deletion process is the only method BLUEGREEN or the Trustee undertook to effectuate the final disposition of Plaintiffs' accounts.

135.    The Credit Reporting Agencies were aware that Plaintiffs' accounts were installment loans, yet they reported them as a "foreclosure."

136.    In reporting the loss of Owner Beneficiary Rights as a "foreclosure," the Credit Reporting Agencies do not maintain adequate procedures mandated by 15 U.S.C. § 1681e(b) because using the same classification to label the loss of a beneficial interest in a trust and ownership of traditional real property is misleading since the two circumstances are factually and legally dissimilar.

137.    Plaintiffs and the proposed class having a "foreclosure" in their credit files associated with their BLUEGREEN accounts was the direct and proximate cause of damages, including but not limited to reduced credit worthiness, Plaintiffs being denied

credit and economic opportunities, Plaintiffs receiving credit on dis-favorable terms compared to those that would have been obtained but for the "foreclosure" appearing in their credit files, and a decreased credit score.

**WHEREFORE**, Plaintiffs and the proposed class respectfully request this Court:

    A.    Award Plaintiffs and the proposed class actual damages sustained;

    B.    Award Plaintiffs and the proposed class reasonable attorneys' fees and court costs pursuant to 15 U.S.C. § 1681o(a)(2); and

    C.    Any additional relief this Court deems just and proper.

## COUNT-VII- WILFULLY FAILING TO MAINTAIN PROCEDURES TO ENSURE MAXIMUM POSSIBLE ACCURACY UNDER THE FCRA AGAINST EQUIFAX AND EXPERIAN

138.    Plaintiffs hereby re-allege all previous allegations one (1) through thirty five (35) and forty seven (47) through ninety (90) as though fully set forth herein.

139.    The Credit Reporting Agencies were aware that Plaintiffs' accounts were installment loans, yet they identified them as a "foreclosure."

140.    The Credit Reporting Agencies were aware of all relevant facts concerning Plaintiffs' accounts, yet still identified them as "foreclosed' and/or a "foreclosure."

141.    The Credit Reporting Agencies wilfully or recklessly failed to maintain maximum reasonable procedures mandated by 15 U.S.C. § 1681e(b) to determine whether the process for divesting Plaintiffs of their Owner Beneficiary Rights was a foreclosure.

142.    In the alternative to having knowledge of the relevant facts concerning Plaintiffs' accounts, the Credit Reporting Agencies were reckless because a basic inquiry into the nature of all BLUEGREEN accounts would have revealed the facts that: (1) the Trustee held legal title to the Resort Interests, (2) BLUEGREEN did not file any judicial or administrative action to foreclose on Plaintiffs' Owner Beneficiary Rights, (3) the only benefits Plaintiffs lost were a beneficial membership in the Bluegreen Vacation Club and

the use of their Vacation Points, and (4) the Deletion process is the only method BLUEGREEN or the Trustee undertook to effectuate the final disposition of Plaintiffs' accounts.

143.   Had the Credit Reporting Agencies maintained sufficient procedures mandated by 15 U.S.C. § 1681e(b), they would have uncovered sufficient facts to determine that Plaintiffs' BLUEGREEN accounts could not factually be labeled "foreclosures" and/or "foreclosed."

144.   In reporting the loss of Owner Beneficiary Rights as a "foreclosure," the Credit Reporting Agencies do not maintain adequate procedures mandated by 15 U.S.C. § 1681e(b) because using the same classification to label the loss of a beneficial interest in a trust and ownership of traditional real property is misleading since the two circumstances are factually and legally dissimilar.

145.   The Credit Reporting Agencies' failure to maintain sufficient procedures to determine the true nature of Plaintiffs' accounts constitutes a reckless disregard for its duties under 15 U.S.C. § 1681e(b) because there was a substantial risk that failing to abide by their statutory obligations would result in misleading and inaccurate information being reported regarding Plaintiffs and the proposed class members' accounts.

146.   Plaintiffs and the proposed class having a "foreclosure" in their credit files associated with their BLUEGREEN accounts was the direct and proximate cause of damages, including but not limited to reduced credit worthiness, Plaintiffs being denied credit and economic opportunities, Plaintiffs receiving credit on dis-favorable terms compared to those that would have been obtained but for the "foreclosure" appearing in their credit files, and a decreased credit score.

**WHEREFORE**, Plaintiffs and the proposed class respectfully request this Court:

    A.    Award Plaintiffs and the proposed class statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A);

B.      Award Plaintiffs and the proposed class punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

C.      Award Plaintiffs and the proposed class reasonable attorneys' fees and court costs pursuant to 15 U.S.C. § 1681n(a)(3); and

D.      Any additional relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

147.   Plaintiffs hereby demand a trial by jury on all counts and issues triable by jury.

## ADDITIONAL PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed class, request judgment be entered against Defendants as requested herein, that the Court grant an order determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs are proper class representatives, that Plaintiffs' attorneys be appointed class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, and that class notice be promptly issued.

Dated:   July 14, 2014

_____/s Shannon Zetrouer_____
Shannon Zetrouer, Esq.
Fla. Bar No. 16237
Tyson J. Pulsifer, Esq.
Fla. Bar. No. 98076
**Finn Law Group, P.A.**
146 2nd St. N., Ste. 100
St. Petersburg, Florida   33701
T: 727/329-8956; F: 727/329-8960
szetrouer@wwz-law.com
tpulsifer@finnlawgroup.com
emoyse@wwz-law.com
pleadings@finnlawgroup.com

27